## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| REBECCA ANN NORTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 2:18-cv-08028-LSC |
| | ) | (2:16-cr-00191-LSC-JEO-1) |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF OPINION

### I.     Introduction

Petitioner Rebecca Ann Norton ("Norton") has filed a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. (Doc. 1.) The United States opposes Norton's § 2255 motion. (Doc. 5.) For the reasons below, Norton's motion is due to be denied without an evidentiary hearing and this action dismissed.

### II.     Background

On June 20, 2016, a federal criminal complaint was filed against Norton, charging her with one count of bank fraud in violation of 18 U.S.C. § 1344(2).

(Crim. Doc. 1.) Norton had her initial appearance before this Court the next day, after she was transferred from the Shelby County Jail where she had been held on related state charges. Thomas Putnam, Esq., then of The Revill Law Firm, appeared with Ms. Norton at that hearing. Victor Revill, Esq. filed an appearance on behalf of Norton shortly thereafter. Before Norton was charged federally, she was represented by Sam Holmes, Esq., an attorney retained to represent her on certain state charges and on related, potential federal charges. However, Mr. Holmes did not file an appearance in federal court on Norton's behalf.

On June 29, 2016, a federal grand jury returned a one-count indictment against Norton for bank fraud. (Crim. Doc. 7.) On July 26, 2016, Norton was charged in a superseding indictment with 30 counts of bank fraud in violation of 18 U.S.C. § 1344(2); 12 counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1); one count of tampering with a witness in violation of 18 U.S.C. §§ 1512(b)(3) & 2; one count of misuse of a social security number in violation of 42 U.S.C. § 408(a)(7)(B); and three counts of making and subscribing a false tax return in violation of 26 U.S.C. § U.S.C. 7206(1). (Crim. Doc. 15.)

On September 29, 2016, pursuant to a written plea agreement containing 12 pages of facts detailing Norton's crimes, Norton pled guilty to nine of those charges: three counts of bank fraud, three counts of aggravated identity theft, and

one count each of witness tampering, misuse of a social security number, and making and subscribing a false tax return. In exchange for her plea, the Government moved the Court to dismiss the remaining charges. Norton's plea agreement contained an appeal waiver with limited exceptions.

On January 24, 2017, the U.S. Probation Office released Norton's Presentence Investigation Report ("PSR"). The report included a two-level increase in Norton's offense level pursuant to U.S.S.G. § 2B1.1(b)(10)(C) due to Norton's use of "sophisticated means" to unlawfully obtain funds. Neither Norton nor her counsel objected to this increase or to anything else in the PSR.

On February 28, 2017, the Court sentenced Norton to a total of 102 months in prison. Judgment was entered on March 6, 2017.

On March 2, 2017, Norton filed a *pro se* notice of appeal to the United States Court of Appeals for the Eleventh Circuit in which she requested appellate counsel. The Court appointed new counsel to represent Norton on appeal. On June 12, 2017, Norton's appointed counsel filed an appellate brief, arguing that this Court plainly erred in its guidelines calculations by applying the "sophisticated means" enhancement to Norton's sentence. On July 12, 2017, the Government moved to dismiss Norton's appeal, stating such action was barred by Norton's appeal waiver

in her plea agreement. The Eleventh Circuit granted the Government's motion, dismissing the appeal on September 20, 2017.

Norton remains in custody.

## C.    § 2255 Proceedings

On September 18, 2018, Norton executed a § 2255 motion, later filed by the Clerk on September 21, 2018.[1] Liberally construing Norton's claims,[2] Norton asserts the following bases upon which § 2255 relief should be granted:

a.    The sophisticated-means enhancement was wrongly applied in calculating her advisory sentencing guideline range (doc. 1 at 8-9); and

b.    Trial counsel provided her with ineffective assistance of counsel by:

    1.    Not challenging the sophisticated means enhancement or the "tampering with a witness" charge (*id.* at 12);

    2.    "[N]ot working in [her] best interest" because they ostensibly (A) were not getting paid enough and/or (B) were being paid by a third party to represent Norton as a mechanism to funnel money connected to a "prostitution ring" (*id.* at 4, 12);

---

[1]    The Eleventh Circuit applies the "mailbox rule" to deem a prisoner's § 2255 motion to have been filed upon the "date that [s]he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

[2]    This Court liberally construes Norton's pleadings as she is a *pro se* litigant. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

3.      Refusing to pay proper attention to her case because Norton and her family did not pay them more money (*id.* at 12);

4.      Mr. Revill's permitting his associate, Mr. Putnam, to handle Norton's case even though "Revill . . . was the attorney that was hired" and the prosecutor allegedly had a "volatile relationship" with Mr. Putnam and/or "hated" Norton (*id.* at 6, 12);

5.      Mr. Revill not meeting her until "a court date" (*id.*at 12);

6.      "[N]ever discuss[ing the] plea agreement with [her]," but rather essentially scaring and/or forcing her into signing the document, apparently including the appeal waiver (*id.* at 7, 10, 12);

7.      Not permitting her to review her PSR before the sentencing hearing (*id.* at 12); and

8.      Not obtaining her medical records before sentencing (*id.*).

## III.    Timeliness and Non-Successiveness of the § 2255 Motion

On September 20, 2017, the Eleventh Circuit dismissed Norton's appeal due to her agreement to an appeal waiver. Norton had 90 days from September 20, 2017, or until December 19, 2017, to file a petition for a writ of certiorari with the Supreme Court of the United States. *See* U.S. Sup. Ct. Rule 13(1). Norton did not file a petition. Thus, her conviction became final on December 19, 2017. *See Clay v. United States*, 537 U.S. 522, 532 (2003) (holding "for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's

one-year limitation period starts to run when the time for seeking such review expires.").

Because Norton filed the instant § 2255 motion within one year of the date that the judgment on her conviction became final, her motion is timely. *See* 28 U.S.C. § 2255 (f)(1). Further, nothing in the record indicates that Norton previously filed a § 2255 motion. Thus, the current motion is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at §§ 2255(h), 2244(b)(3)(A).

## IV.    Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of

justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

In litigation stemming from a § 2255 motion, "'[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the . . . [movant's] allegations are affirmatively contradicted by the record.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the Court to conduct an evidentiary hearing if, "'accept[ing] all of the . . . [movant's] alleged facts as true,'" the movant has "'allege[d] facts which, if proven, would entitle him to relief.'" *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (internal citations omitted).

## V.    Discussion

Norton's claims can be divided into a substantive claim—her challenge to the sophisticated means enhancement—and her claims of ineffective assistance of counsel.

### A.    Norton's Substantive Claim—the Challenge to her Sentence—is Procedurally Defaulted, Barred by her Appeal Waiver, and Meritless

In her plea agreement, Norton generally waived her right to challenge her sentence on direct appeal or by collateral attack. The waiver contained three

exceptions: (a) any sentence imposed in excess of the applicable statutory maximum sentence(s); (b) any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and (c) claims of ineffective assistance of counsel. (Crim. Doc. 24 at 22-23.)

Appeal waivers are enforceable against substantive challenges on direct appeal or by collateral attack if they are knowingly and voluntarily entered into. *See United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993) (direct appeal); *Williams v. United States*, 396 F.3d 1340, 1341-42 (11th Cir. 2005) (collateral attack). To demonstrate that the waiver is enforceable, "'[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.'" *Williams*, 396 F.3d at 1341 (quoting *Bushert*, 997 F.2d at 1351).

Here, this Court specifically questioned Norton concerning the sentence appeal waiver during her plea colloquy. Norton affirmed her understanding of the waiver of her right to appeal and/or mount a collateral attack. (Crim. Doc. 52 at 22-23.) Thus, the waiver is enforceable against Norton's challenge to the sophisticated means sentence enhancement.

Additionally, despite her appeal waiver, Norton did appeal the exact issue she raises here, and the Eleventh Circuit dismissed the appeal as barred by her appeal waiver. "It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that we rejected in his direct appeal." *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014). As such, Norton's substantive claim is procedurally barred from review in this proceeding.

Even if this Court could consider this claim, the application of the sophisticated means enhancement to Norton's sentence was not in error. Under this enhancement, two points are added to the defendant's guideline level "if the offense . . . involved sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). While the Sentencing Guidelines do not define "sophisticated means," the Application Note accompanying that section describes "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," and ordinarily includes "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. § 2B1.1(b)(10)(C) (Application Note at 9(B)). The illustrations in the Application Note are a "nonexclusive list of examples . . . ." *United States v. Feaster*, 798 F.3d 1374, 1381 (11th Cir. 2015)

(quoting *United States v. Campbell*, 491 F.3d 1306, 1316 (11th Cir. 2007)). Additionally, each step of a defendant's conduct need not be intricate or complex so long as the conduct as a whole sufficiently supports the application of the enhancement. *Id.* (holding defendant's repeated, fraudulent conduct was sophisticated without concealment when a large sum of money was unlawfully taken, and not detected, over an extended period).

Norton's plea agreement is replete with facts revealing the sophistication of her fraud schemes. Indeed, Norton stipulated to using "at least three different methods of unauthorized access . . . to execute hundreds of transactions through which she fraudulently obtained" more than $300,000 from two different companies. (Crim. Doc. 24 at 9.) She also admitted that she executed her schemes "by, among other things, . . . altering genuine financial records . . . and making various false entries to conceal her fraudulent activities." (*Id.* at 12.) Taken together, this conduct was sufficient to support the application of the sophisticated means enhancement to increase her offense level under U.S.S.G. § 2B1.1(b)(10)(C). Thus, even if the claim was not waived and procedurally barred, it would fail.

**B.      Norton's Ineffective Assistance of Counsel Claims are Meritless**

Norton argues that Mr. Revill and Mr. Putnam rendered ineffective assistance of counsel in a variety of ways. Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to the procedural bar for failing to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner must show that the counsel's performance was deficient; second, the petitioner must show that the counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second component is satisfied only when the defendant shows that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see*

*Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decisions about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry her burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that her counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and deprived the defendant of a "fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 692.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for her counsel's unprofessional errors, she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are

reasonable: "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the State's case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show that no competent counsel would have taken the action that her counsel took. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> **1.** **Allegation that counsel failed to "argue" the witness tampering charge and the sophisticated means sentence enhancement**

Norton asserts that her counsel provided ineffective assistance because he failed to "argue" the sophisticated means sentencing enhancement and the witness tampering charge. As discussed above, Norton's stipulated conduct supported the application of the sophisticated means enhancement. As such, it was reasonable for counsel not to raise the argument at sentencing.

> "[C]ounsel is not required to present every nonfrivolous defense, since "[s]tacking defenses can hurt a case." [*Chandler*, 218 F.3d] at 1319. Rather, "[g]ood advocacy requires winnowing out some arguments . . . to stress others." *Id.* (internal quotation marks omitted). Thus, it is quite difficult to establish that the omission of any particular argument resulted in ineffective assistance, although such a showing is possible if the argument or arguments neglected were stronger than the ones counsel actually offered.

*Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (citation omitted).

With regard to the witness tampering charge, Norton does not identify any basis on which her counsel could have "argued" it. To establish witness tampering, the Government must show a defendant "knowingly and willfully (1) engage[d] in misleading conduct toward another person, (2) with the intent to hinder, delay or prevent the communication of information to a federal official, (3) about the commission or the possible commission of a federal crime." *United States v. Ronda*, 455 F.3d 1273, 1284 (11th Cir. 2006) (citing *United States v. Veal*, 153 F.3d 1233, 1253 (11th Cir. 1998)). The conduct Norton stipulated to in her plea agreement satisfies the elements of that offense. (Crim. Doc. 24 at 15.) Additionally, at her plea colloquy, the following discussion occurred:

THE COURT: Okay. The next one is Count 42, which is a violation of 18 USC Section 1512. To prove you guilty of this particular offense, the government must prove that there was a person, TB and DB, they were identified by their initials in the indictment but I know your lawyer knows who they are, and that's been disclosed to you in discovery, I

know; that you knowingly attempted to corruptly persuade them, delay or prevent or hinder their testimony, and that you did that by – would it be intimidation, government?

MS. ATWOOD: It was not intimidation, Your Honor. It was – the allegations are simply the corrupt persuasion.

THE COURT: All right, corrupt persuasion. Do you understand what the government has to prove to prove you guilty of those particular offenses?

DEFENDANT: Yes.

(Crim. Doc. 52 at 12-13.) Moreover, once a defendant pleads guilty to the material elements of a charge, any ineffective assistance of counsel claim related to pre-plea issues is ordinarily waived. *See, e.g., Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Accordingly, Norton cannot establish ineffective assistance of counsel based on her claim that she wanted to "argue" the witness tampering charge.

**2 & 3. Allegations that counsel did not work in Norton's best interest because they were not being paid enough and/or were being paid by a third party to launder money to a prostitution ring**

Norton makes several assertions that counsel was not working in her best interest because they either were not being paid enough or because they were being paid by someone she met in Shelby County Jail who offered to pay for her representation in order to "use[ her] to pay Mr. Revill for some sort of prostitution

ring." She claims that Mr. Putnam repeatedly said he was not being paid enough to represent her, even asking her mother for additional money.

The Government has provided affidavits from Mr. Revill and Mr. Putnam, who both attested that their representation was not negatively impacted by the amount they were paid to represent Norton. (Docs. 5-16 & 5-17.) Specifically, Mr. Revill recalled that several members of his firm worked on Norton's case to provide her with appropriate representation. (Doc. 5-16 at 2.) He flatly denied knowledge of a prostitution ring, much less that his representation of Norton was a disguise for funneling money from such an organization. (*Id.* at 1.) Instead, Mr. Revill attested to specific details regarding how he came to be paid by a friend of Norton's to represent her. (*Id*. at 1-5.)

Even aside from her counsel's affidavits flatly contradicting her claims, Norton's claim fails because it is contradicted by the record and she has not demonstrated prejudice. When asked during her change of plea hearing about her counsel's performance, Norton stated that her counsel "ha[d] been very good." (Crim. Doc. 52 at 4). Norton stated she had no complaints or problems with Mr. Putnam's representation. (*Id.*) Likewise, she affirmed that she believed enough time was spent on her case by her counsel. (*Id.*) Without specific facts supporting ineffective assistance based on her inability to pay or evidence showing funneling of

dollars to a prostitution ring, Norton has not shown she received ineffective assistance of counsel under the *Strickland* standard.

### 4. Allegation that Mr. Revill assigned Mr. Putnam to Norton's case

Norton cannot demonstrate that it was deficient performance for Mr. Revill to assign another lawyer in his firm to work on Norton's case. Both Mr. Revill and Mr. Putnam were her attorneys of record, and Norton still apparently spoke with Mr. Revill on at least two occasions. (*See* Doc. 1 at 6, 12 (regarding conversations Norton had with Mr. Revill).) Moreover, Norton can demonstrate no prejudice from Mr. Putnam doing most of the work on her case. In her primary attempt to make this showing, Norton argues that Mr. Putnam told her that he had a bad relationship with the Assistant U.S. Attorney prosecuting her case, beginning in law school. This assertion has been contradicted by Mr. Putnam, who noted that he did not attend law school with the prosecutor and had indeed not met her until Norton's case. (Doc. 5-17 at 3.) *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A movant's claims of ineffective assistance of counsel are thus subject to dismissal without a hearing when they "are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'"). Because Norton has demonstrated by her pleading neither deficient

performance nor prejudice related to Mr. Revill's assigning her case to Mr. Putnam, this claim fails.

### 5. Allegation that Mr. Revill did not meet with Norton until "a court date"

Norton alleges that she did not meet Mr. Revill until "a court date." (Doc. 1 at 12.) Mr. Revill has stated in his affidavit that he may have indeed met Norton for the first time at the Shelby County, Alabama, courthouse in April 2016, after having been retained to represent her that same month. (Doc. 5-16 at 2.) Regardless, at Norton's change of plea hearing, she testified under oath that counsel from Mr. Revill's firm had spent ample time with her on her case and that she had no complaints about the representation. (Crim. Doc. 52 at 4.) In the light of this record and her minimal allegations, Norton cannot succeed on an ineffective assistance of counsel claim related to when she first met Mr. Revill.

### 6. Allegation that counsel forced Norton to sign her plea agreement

Norton contends that Mr. Putnam forced her to sign and agree to the plea agreement and the appeal waiver, telling her she had no choice. (Doc. 1 at 4, 7, 10, 12.) She also states her initial counsel, Sam Holmes, told her to "accept everything" to receive less time. (*Id.* at 12.) Finally, Norton states she agreed to the

plea agreement because she was told if she did not, the prosecution would involve her elderly mother. (*Id.*)

Not only are these claims contradicted by the affidavits of Mr. Revill and Mr. Putnam (*see* doc. 5-16 & 5-17),[3] they are belied by Norton's own testimony before this Court. At the time of her change of plea hearing, Norton testified that Mr. Putnam had "been very good" as an attorney and that she had no problems with his representation. (Crim. Doc. 52 at 4.) She affirmed that Mr. Putnam had spent a "sufficient amount of time helping [her] with [her] case." (*Id.*) Norton also testified during that hearing that she understood that she had given up most of her rights to direct appeal or collateral attack. (*Id.* at 22-23.) Almost immediately thereafter, she swore that no one had "threatened, forced . . . or coerced [her] in any way" to induce her guilty plea. (*Id.* at 23.) Finally, just before permitting Norton to enter her guilty plea formally, the Court asked, "Are you wanting to plead guilty because you are, in fact, guilty?" to which Norton answered resoundingly, "Absolutely; yes, sir." (*Id.*) The record in this case affirmatively contradicts Norton's allegations that counsel rendered ineffective assistance in presenting the plea agreement to her.

---

[3]     To the extent Norton complains about the representation of Mr. Holmes, he only represented her pre-charge on federal matters, never formally appearing before this Court on her behalf. Thus, it is not clear how he could have provided ineffective assistance of counsel in a case where he never formally served as counsel.

### 7. Allegation that counsel did not permit Norton to review the PSR before sentencing

Norton asserts that she did not review her PSR before the day of her sentencing hearing. This is inconsistent with Mr. Putnam's affirmative response to the Court during the sentencing hearing when the Court asked counsel whether he and Norton had had at least 35 days to review the PSR. (Crim. Doc. 40 at 2.) Norton did not speak up to contradict either the Court or Mr. Putnam at that time, and she did not make any such assertion later in the hearing when she spoke directly to the Court. (*See id*. at 2, 14-15.) The record contradicts Norton's assertion that she was denied sufficient time to review the PSR. In addition, Norton has failed to demonstrate any prejudice she suffered based on the timing of her review of the PSR. Absent facts demonstrating prejudice in her case due to inability to review the PSR, Norton's claim fails.

### 8. Allegation that counsel failed to obtain Norton's medical records prior to sentencing due to the cost

Norton states that her counsel refused to obtain her medical records prior to her sentencing due to their cost. (Doc. 1 at 12.) Mr. Putnam denies this. (Doc. 5-17 at 2-3.) Even if the cost of medical records had been a factor, Norton cannot demonstrate that she was prejudiced by counsel not obtaining those records. Both

Norton's sentencing memorandum and counsel's arguments at sentencing addressed her mental and physical health issues. (*See* crim. docs. 27 & 40.) During her sentencing hearing, Norton's counsel detailed Norton's physical abuse, mental health, and substance abuse challenges. (Crim. Doc. 40 at 12-13.) After detailing those facts, her counsel noted incarceration costs would be higher for Norton due to her physical and mental health issues. He then requested a sentence at the low range of the sentencing advisory guidelines. (*See id.* at 13.) Norton has not demonstrated that counsel's having possession of the medical records would have altered the manner or extent of how her health was presented to the Court, much less that it would have changed the sentence she received. Indeed, the Court noted at Norton's sentencing that it would have been justified to impose a higher sentence based on the facts and circumstances of the case. (Crim. Doc. 40 at 20.) Norton has not demonstrated she received ineffective assistance of counsel by her counsel's alleged failure to obtain her medical records.

## VI.   Conclusion

For the foregoing reasons, Norton's § 2255 motion is due to be denied and this case dismissed with prejudice.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the

applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that a reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). This Court finds that Norton's claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON August 9, 2019.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704